IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| --- | --- | --- |
| | : | NO. 04-355-02 |
| v. | : | |
| | : | |
| EDWARD M. GILLIARD | : | CIVIL ACTION |
| | : | NO. 09-2401 |
| | : | |

DuBOIS, J.                                                                                                November 20, 2009

## MEMORANDUM

### I. Introduction

On June 6, 2005, following a jury trial, petitioner Edward M. Gilliard was convicted of conspiring with others to interfere with interstate commerce by robbery, aiding and abetting an attempt to interfere with interstate commerce by robbery, and aiding and abetting the use and carrying of a firearm during and in relation to a crime of violence. For these crimes, petitioner was sentenced on February 22, 2006, to a term of imprisonment of 117 months.

Presently before the Court is petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("the Motion") pursuant to 28 U.S.C. § 2255, which petitioner filed on May 26, 2009. For the reasons set forth below, the Court denies the Motion.

### II. Background

Petitioner was charged in a four-count Superseding Indictment with conspiring to interfere with interstate commerce by robbery and conspiring to commit carjacking, in violation of 18 U.S.C. §§ 371, 1951(a), and 2119 (Count One); carjacking, and aiding and abetting, in violation of 18 U.S.C. §§ 2119 and 2 (Count Two); attempting to interfere with interstate

1

commerce by robbery, and aiding and abetting, in violation 18 U.S.C. §§ 1951(a) and 2 (Count Three); and knowingly using and carrying a firearm during and in relation to a crime of violence, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Four).[1]

The charges in the Superseding Indictment were based on the robbery of a business, Craig Electric, during business hours on July 3, 2001. On that day, petitioner drove two individuals to Craig Electric, Harold Stanley ("Stanley") and John Harris ("Harris"), who were armed. Petitioner waited in the vehicle while Stanley, Harris, and a third participant, Ernest Juriel ("Juriel"), robbed the business and committed related crimes. Thereafter, on November 18, 2002, petitioner voluntarily participated in an interview by Detective Christopher Lee about the incident. A warrant for petitioner's arrest was issued on June 17, 2004; petitioner surrendered to police on September 14, 2004.

Petitioner's trial counsel was Thomas Egan, Esq. ("Egan"), who was appointed by the Court to represent petitioner before the Grand Jury and in petitioner's criminal trial. On September 27, 2004, petitioner and his counsel met with the government for a proffer interview. Petitioner signed a standard proffer letter, which stated, among other things, that while "no statements made by [petitioner] . . . will be used directly against [him] in any criminal case," "the

---

[1] Counts One and Three charge violations of the Hobbs Act, 18 U.S.C. § 1951, which provides:
>Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

Id. § 1951(a).

government may make derivative use of, and may pursue investigative leads suggested by, statements made or information provided [by petitioner]." (Proffer Letter, Sept. 27, 2004, Govt.'s Resp. Ex. A.) The proffer letter further advised that petitioner "waives any right to challenge such derivative use of [information provided during the interview]; and that "the government may cross-examine [petitioner], introduce rebuttal evidence and make representations based on statements made or information provided during the 'off-the-record' proffer." (Id.)

Petitioner's trial commenced on May 31, 2005. At trial, the government called law enforcement officers, the two victims of the robbery, and two participants in the robbery, Juriel and Stanley, who had both pled guilty and had agreed to cooperate with the government. Petitioner did not testify on his own behalf.

The case was submitted to the jury on the conspiracy charge in Count One; the charge in Count Two that petitioner aided and abetted carjacking; the charge in Count Three that petitioner aided and abetted a Hobbs Act robbery; and the charge in Count Four that petitioner aided and abetted the using and carrying of a firearm during and in relation to a crime of violence. On June 6, 2005, the jury found petitioner guilty on all of these charges except conspiracy to commit carjacking in Count One. On June 13, 2005, by agreement, the Court granted petitioner's oral Motion for Judgment of Acquittal Under Federal Rule of Criminal Procedure 29 as to Count Two, aiding and abetting carjacking.

Petitioner was sentenced on February 22, 2006. Prior to the hearing, the government filed, and then withdrew, a motion for an upward departure from the sentencing guideline range. The Court sentenced petitioner to, inter alia, 117 months incarceration—a sentence in the middle of the guideline range of 111 to 123 months.

Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit. In a non-precedential opinion dated September 28, 2007, the Third Circuit affirmed this Court's rulings. United States v. Gilliard, 248 Fed. Appx. 462, 465 (3d Cir. 2007). Petitioner filed the instant Motion on May 26, 2009.

## III. Discussion

In his Motion, petitioner sets forth five claims. The first three claims allege ineffective assistance of counsel on the ground that counsel: 1) advised petitioner to participate in a proffer interview even though he maintained his innocence, and despite the fact that information obtained at the proffer could be used to cross-examine him if he chose to testify at trial; 2) stipulated to the interstate commerce element of the Hobbs Act offenses; and 3) failed to object to the Court's instruction to the jury that "conspiring to interfere with interstate commerce by robbery and conspiring to commit carjacking is a crime of violence." In his final two claims, petitioner asserts violations of his due process rights under the Fifth Amendment of the United States Constitution based on: 1) the government's misleading statement during closing argument that "[t]here's no sweetheart deals here, ladies and gentlemen"; and 2) the government's inaccurate representation during petitioner's Sentencing Hearing of the sentences imposed against Harris and Stanley. The Court held a hearing on the first two ineffective assistance of counsel claims on September 29, 2009. Below, the Court addresses each of petitioner's claims in turn.

### A. Ineffective Assistance of Counsel Claims

#### 1. Legal Standard

"Strickland v. Washington supplies the standard for addressing a claim of ineffective

assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing Strickland, 466 U.S. 668, 687 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This standard requires a familiar two-part inquiry. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." Id. at 687–88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

### 2. First Ineffective Assistance of Counsel Claim: Proffer Interview

In his Motion, petitioner argues that he received ineffective assistance of counsel because trial attorney Egan advised him to participate in a proffer interview even though petitioner informed counsel that "he was not guilty of the charges, and wanted to stand trial." (Pet'r Mot. 27.) He further claims that he was not informed of the disadvantages of attending the proffer and that the government would be able to use statements made during the proffer against him if he testified during trial. (Pet'r Reply 7.) Finally, petitioner contends that "[b]ut for [this] error," he "would have testified," "there would have been no basis for impeachment of his testimony," and there would have been "a reasonable probability of a different outcome" in the trial—namely, an acquittal. (Pet'r Mot. 6, 27.) The Court held an evidentiary hearing on this claim on September

5

29, 2009.

Under the first prong of Strickland, the Court concludes that Egan's advice regarding participation in the proffer interview was not deficient. First, Egan testified that the decision to attend the proffer was a strategic choice made by petitioner to allow him to explore all of his options, including cooperation and a plea agreement. (Hr'g Tr. 54, Sept. 29, 2009.) The Court finds this decision reasonable as part of Egan's defense strategy. See United States v. Hankerson, 496 F.3d 303, 310 (3d Cir. 2007) ("In assessing counsel's performance, . . . defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quoting Strickland, 466 U.S. at 689 (citation and internal quotation omitted))).

Second, petitioner signed the proffer letter, which provided that his statements could be used in cross-examination. On this issue, Detective Lee testified that when he picked up petitioner on the day of the proffer and "asked him if he knew why he was there [in the federal building], [petitioner] indicated that he did." (Hr'g Tr. 21, Sept. 29, 2009.) He also testified that Assistant United States Attorney ("AUSA") Amy Kurland reviewed the proffer letter with petitioner at the beginning of the interview, and thereafter, Detective Lee explained the letter to petitioner in plain language. At the conclusion of that explanation, he "asked [petitioner] if he understood and he indicated that he did." (Id. at 22.) Egan also testified that he explained the proffer letter to petitioner "line by line" before the interview began. (Id. at 73.) According to Egan, petitioner made the decision to participate in the proffer session only after discussing the different options available. (Id. at 63, 71.)

Petitioner testified that while he agreed to attend the proffer session because he had

6

nothing to hide, neither AUSA Kurland nor Egan explained the proffer letter to him. (Id. at 130.) Petitioner asserted that AUSA Kurland threatened him, stating, "I'm going to make a way to carry you out of here in a pine box." (Id. at 135.) Petitioner also claimed that while his signature was on the proffer letter presented to him during the evidentiary hearing, he did not sign the letter during or prior to the proffer session. (Id. at 126, 129, 131, 135.) The Court credits the testimony of Lee and Egan, and does not find petitioner's contrary testimony to be credible.

Notwithstanding the fact that the Court concludes that Egan's representation was not deficient, the Court next addresses the prejudice prong of Strickland. The Court concludes that petitioner was not prejudiced as a result of his participation in the proffer, as the proffer did not provide the government with any new information that would have been admissible on cross examination. As to this issue, Detective Lee testified that at the September 27, 2004, proffer session petitioner: (1) affirmed his November 18, 2002, statement, which detailed prior robberies committed with Stanley and Harris as the getaway driver;[2] and (2) presented new information on robberies committed with a "second crew." (Id. at 26-28.) Detective Lee also stated that petitioner first told him about his involvement in other robberies with Stanley and Harris during the November 18, 2002, interview—an interview that occurred almost two years before the proffer. (Id. at 17, Govt. Ex. 3.) As a result, separate and apart from the proffer, the government already had petitioner's statement that he was the getaway driver in previous robberies with Stanley and Harris.

Moreover, before trial, in ruling on the government's Motion in Limine, the Court

---

[2] The Court notes that nothing in petitioner's November 18, 2002, statement regarding the robbery of Craig Electric was inculpatory.

precluded the government's use of any evidence of petitioner's prior robberies with Stanley and Harris because the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. Although that ruling did not address other information petitioner supplied at the proffer—specifically, details about robberies he committed with a "second crew"—that evidence was clearly inadmissible and the government did not include it in its Motion in Limine or seek to use it for any purpose. Thus, because no information that petitioner presented during the proffer session was admissible at trial, the Court concludes that no prejudice resulted from his participation in the proffer.

Petitioner argues in his Motion that his decision not to testify at trial was due to his participation in the proffer, and that had he testified, the jury would have returned a not guilty verdict on all counts. However, the evidence presented at the hearing does not support petitioner's claim. Petitioner stated at the hearing that he wanted to testify in his own defense at trial, but did not explain to the Court why he chose not to. (Id. at 232.) On the other hand, Egan testified that petitioner had planned to testify well into the trial, but changed his mind, not because of the proffer session, but because Egan engaged him in a mock cross-examination which petitioner found very difficult. Specifically, Egan said, "[petitioner] decided that it wouldn't be in his best interests to testify, because he was having real difficulty being able to answer the questions and didn't want to subject himself to that." (Id. at 65, 93-94.) Based on all the evidence presented, the Court rejects petitioner's testimony that, but for the proffer, he would have testified at trial.

Even if petitioner had testified, it is implausible that the jury would have reached a different verdict. The jury heard petitioner's explanation of what happened on the day of the

8

robbery through Detective Lee's trial testimony, when he read from petitioner's November 18, 2002 statement:

> On July 3rd, 2001, [petitioner] went to John Harris'[s] house, . . . picked him up and took him to West Philadelphia. Before they got to West Philadelphia, they stopped at a water ice stand and bought water ice. [Petitioner] had let Harris drive and went to sleep, and when he woke up there were in West Philadelphia. They were on the corner of Felton by the lighting place. [Petitioner] had been on a three-day crack cocaine binge.

(Trial Tr. 89, June 2, 2005.) During the evidentiary hearing, petitioner himself stated on cross-examination that the defense he would have testified to at trial had been fully presented to the jury by others (id. at 140), presumably through Detective Lee's testimony and Egan's cross examination of government witnesses. Thus, the Court concludes that Egan's advice to petitioner that he participate in the proffer session did not prejudice petitioner.

### 3. Second Ineffective Assistance of Counsel Claim: Trial Stipulation on Interstate Commerce

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section" commits a crime. 18 U.S.C. § 1951(a). Petitioner was charged with two Hobbs Act offenses in the Superceding Indictment: conspiring to interfere with interstate commerce by robbery, in violation of 18 U.S.C. §§ 371 and 1951(a) (Count One); and attempting to interfere with interstate commerce by robbery, and aiding and abetting, in violation 18 U.S.C. §§ 1951(a) and 2 (Count Three). As noted previously, with respect to Count Three, only the aiding and abetting charge

9

was submitted to the jury.

For a conviction on Count Three, the government was required to prove beyond a reasonable doubt that: (1) one of the alleged co-conspirators knowingly intended to obtain or take the personal property of another; (2) one of the alleged co-conspirators attempted to take this property against the victim's will by actual or threatened force; (3) as a result of these actions, interstate commerce or an item moving in interstate commerce, would have been delayed, obstructed or affected in any way or degree, had the robbery been successful; (4) one of the alleged co-conspirators did some act that was a substantial step in an effort to accomplish the crime; and (5) the defendant aided and abetted the commission of this crime. (See Trial Tr. 111-12, June 3, 2005.) A conviction on Count One required that the government prove beyond a reasonable doubt that: (1) two or more persons entered into an unlawful agreement to commit a Hobbs Act robbery; (2) at some time during the life of the conspiracy, defendant knew of its purposes and deliberately joined the conspiracy; and (3) at some time during the life of the conspiracy, one co-conspirator knowingly performed one of the overt acts charged in the Superseding Indictment. (Id. at 95-96.)

With respect to the interstate commerce element, the government is only required to show a potential, de minimus affect on interstate commerce; actual proof of impact is not necessary. United States v. Urban, 404 F.3d 754, 781 (3d Cir. 2005); United States v. Haywood, 363 F.3d 200, 209-11 (3d Cir. 2004). On this issue, before the close of evidence, the parties stipulated that "interstate commerce or an item moving in interstate commerce, would have been delayed, obstructed or affected in any way or degree had the robbery been successful." (Trial Tr. 116, June 3, 2005.) The jury found petitioner guilty of both Hobbs Act offenses.

In his Motion, petitioner argues that trial counsel was ineffective for stipulating to the interstate commerce element of the Hobbs Act offenses. He states that Craig Electric was not a Pennsylvania corporation or otherwise licensed to do business, and was therefore not involved in interstate commerce. (Pet'r Mot. 19.) Absent the stipulation, petitioner asserts that he could have claimed, following United States v. Wang, 222 F.3d 234 (6th Cir. 2000), that the robbery was directed at a person who happened to own a business and not at a business engaged in interstate commerce. (Id. 19-20.) Thus petitioner argues he would have had a defense to the Hobbs Act charges if Egan had not stipulated to the interstate commerce element of the offense. The Court granted petitioner an evidentiary hearing on this claim.

Egan testified that he consulted with petitioner before entering into the interstate commerce stipulation and that petitioner did not object to it. Egan stated, "[m]atter of fact, [petitioner] agreed with me that we should keep the case focused where it should be. . . . [S]trategically, you like to keep the jury focused on the issue that you're presenting as your defense in the case." (Id. at 79.) Egan also testified that he believed that there was no colorable defense that the attempted robbery did not impact interstate commerce,

> Because by virtue of the type of pieces and parts that any electric store would have, obviously, the things are coming and going through interstate commerce. If money is taken from them and their ability to purchase new things or replacement items or conduct their business is impacted . . . .

(Id. at 80.) Egan's decision to focus on what he believed was petitioner's best defense—innocence—was sound trial strategy, and thus not deficient performance under the first prong of Strickland. See Hankerson, 496 F.3d at 310 (quoting Strickland, 466 U.S. at 687).

Notwithstanding the Court's determination that Egan's representation with respect to the

interstate commerce stipulation was reasonable, the Court will next address the issue of prejudice. The Court concludes that no prejudice resulted to petitioner under the second prong of Strickland. The circumstances of this case are not similar to those of Wang, on which petitioner relies. Wang involved a home robbery, which led the Sixth Circuit to conclude that there was no impact on interstate commerce. See Wang, 222 F.3d 234. On direct appeal, the Third Circuit rejected petitioner's comparison to Wang: "Here, the attempted robbery was directed against Craig Electric, a business entity. Consequently, Wang is inapposite, and [petitioner]'s reliance on it is misplaced." Gilliard, 248 Fed. Appx. at 464. This Court likewise rejects that comparison.

There was very little evidence presented to the jury at trial as to the effect of the attempted robbery on interstate commerce, presumably because of the stipulation. On the issue of interstate commerce, the trial record includes the testimony of Grayling Craig ("Craig"), owner of Craig Electric, who stated that his business performed "electrical work, residential, heating and plumbing" work, and that "trucks" and other "materials" were kept in Craig Electric's garage, which were used on the job. (Trial Tr. 53, 62, June 1, 2005.) Craig also stated that at the time of the robbery, his business had an income of approximately $5,000 per week. (Id. at 66.) Standing alone, this evidence is insufficient to establish that a robbery of Craig Electric would have had even a de minimus affect on interstate commerce. But logic and experience lead the Court to conclude that, taken together, all evidence relating to Craig Electric's business—including the reasonable inference that not all equipment and supplies could have been manufactured and purchased in Pennsylvania—serves to buttress Egan's decision to enter into the stipulation.

As Egan's decision to stipulate to the interstate commerce element of the Hobbs Act

12

offenses was neither deficient nor prejudicial, petitioner's interstate commerce claim must fail.

### 4. Third Ineffective Assistance of Counsel Claim: Jury Instruction

Petitioner argues that his trial counsel was deficient for failing to object to the Court's instruction with respect to Count Four that "conspiring to interfere with interstate commerce by robbery and conspiring to commit carjacking is a crime of violence." (Pet'r Mot. 20.) Petitioner claims that this instruction "directed a verdict" on an element of the crime. (Id.) The Court finds this claim to be without merit. As the Third Circuit held on direct appeal, "[petitioner] suffered no prejudice from the District Court's instruction, for it is well settled that conspiracy to commit robbery is a crime of violence." Gilliard, 248 Fed. Appx. at 465. The same is true of conspiracy to commit carjacking, but the jury instruction given on that issue is not relevant to petitioner's Motion because he was acquitted of that charge. Egan's failure to object to the instruction does not constitute deficient representation, and no prejudice resulted.

### B. Fifth Amendment Due Process Claims

### 1. First Due Process Claim: Closing Argument

Petitioner argues that the government's closing argument was false and misleading, as it told the jury that, with respect to the sentences of petitioner's co-conspirators, Stanley and Juriel, "[t]he government wasn't giving out any favors here. The Government made both defendants eat the entire indictment against them. . . . There's no sweetheart deals here, ladies and gentlemen. These men admitted what they did and they are being punished for it severely." (Trial Tr. 30-31, June 3, 2005; Pet'r Mot. 22-23.) Petitioner argues that these statements were misleading to the jury because Stanley and Juriel, who testified against petitioner at trial, later received sentence reductions by reason of their cooperation. Petitioner asserts that Stanley's sentence was reduced

13

from thirteen to ten years, "which is by any person's definition a favor and a sweetheart deal," and that the government's argument "was material to the outcome of an otherwise close case." (Pet'r Reply 13.)

In evaluating claims of prosecutorial misconduct, the Court must consider "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fahy v. Horn, 516 F.3d 169, 198 (3d Cir. 2008) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)). In this case, the government's statements in its closing argument did not constitute prosecutorial misconduct.

First, the government's statements were true: both co-conspirators plead to all counts in the indictments against them, no charges were dropped in exchange for cooperation, and both faced significant sentences. (See Govt. Resp. 24.) Second, the government's statements were not misleading in the context of the entire trial. Stanley and Juriel each testified during trial that they had cooperated with the government in the hope that their cooperation would lead to reduced terms of imprisonment. (See Trial Tr. 144, 166-67, 193, June 1, 2005; Trial Tr. 13, 15, 17, 25-26, June 2, 1005.) Accordingly, the Court instructed jurors to examine their testimony with great care to "determine whether the testimony of a cooperating witness has been affected by self-interest or by an agreement he may have had with the Government or by his own interest in the outcome of the case or by prejudice against the defendant." (Trial Tr. 90, June 3, 2005.) Finally, the sentences of Stanley and Juriel, about which petitioner argues, were not reduced until after petitioner's sentencing. As a result, the Court concludes that the government's closing remarks were not misleading and do not constitute a denial of petitioner's due process rights.

### 2. Second Due Process Claim: Sentencing

Petitioner argues that the government inaccurately represented the sentences imposed against Harris and Stanley at petitioner's Sentencing Hearing. The government told the Court at sentencing that Harris received 178 months, Stanley 155 months, and Juriel 144 months, but Stanley's sentence was later reduced to 120 months and Harris's to 144 months. If the Court had been informed of this, petitioner argues that his sentence would have been lower. (Pet'r Mot. 23-24.)

A sentence violates due process if based on inaccurate information or false assumptions. United States v. Berry, 553 F.3d 273 (3d Cir. 2009). The Court determined a guideline range of 111 to 123 months, and during petitioner's sentencing, stated, "Taking everything into consideration I am not going to impose a sentence at the high end of the guideline range and I'm not going to impose a sentence at the low end of the guideline range, I am going to impose a sentence in the middle of the guideline range, a sentence of 117 months." (Sent. Hr'g Tr. 69, Feb. 22, 2006.) The Court imposed petitioner's sentence based on the guideline range, and not relative to the sentences received by petitioner's co-conspirators. Thus, petitioner's sentencing claim lacks merit and there is no violation of due process on this ground.

### IV. Certificate of Appealability

In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition [or motion] alleges a deprivation of constitutional rights." Morris v. Horn, 187 F.3d 333, 340 (3d Cir. 1999); see also 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right."). The Court concludes that petitioner has not made such a showing. Thus, the Court will not issue of certificate of appealability.

## V. Conclusion

For the above reasons, petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") pursuant to 28 U.S.C. § 2255 is denied. An appropriate order follows.